**Lionel Wayne MAGEE, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, et al., Defendants.**

Civ. A. No. 3:94–1412.

United States District Court,
W.D. Louisiana,
Monroe Division.

July 31, 1995.

---

8. *Id.* at 467, 82 S.Ct. at 916, *quoting Internatio–Rotterdam, Inc. v. Thomsen,* 218 F.2d 514, 517 (4th Cir.1955).

Kenneth W. Campbell, Malcolm W. Pipes, Ruston, LA, for Lionel Wayne Magee.

Lionel Wayne Magee, Downsville, LA, pro se.

John A. Broadwell, John Robert Halliburton, Howard Brown, Sr. Attorney, Thomas Blum, Attorney, U.S. Postal Service, Memphis, TN, U.S. Attorney's Office, Shreveport, LA, for U.S. Postal Service, Marvin Runyon, Carleigh Leake.

John Robert Halliburton, U.S. Attorney's Office, Shreveport, LA, for Mike Smith, Donald G. Vercher.

## MEMORANDUM RULING AND JUDGMENT

MELANÇON, District Judge.

Before the Court is a motion for summary judgment to affirm a previous decision of the Merit Systems Protection Board filed by the defendants and cross-motions for summary judgment on plaintiff's claim of violations of the Rehabilitation Act and the Privacy Act. For the reasons that follow, the motion for summary judgment to affirm the decision of the Merit Systems Protection Board filed by defendants is denied for want of jurisdiction, the motion for summary judgment filed by plaintiff is denied, and the motion for summary judgment on plaintiff's Rehabilitation Act and Privacy Act claims filed by defendants is granted in its entirety.

### The Factual Background

Plaintiff Lionel Wayne Magee is a former employee of the United States Postal Service. Following a "fitness for duty" examination that found plaintiff was unable to perform the essential functions of his job as a mailhandler the Postal Service terminated him.

Plaintiff appealed the action of the Postal Service to the Merit Systems Protection Board. The MSPB affirmed the action of the Postal Service in discharging plaintiff.

Plaintiff then brought suit in federal district court under the Rehabilitation Act of 1973, alleging that he was discriminated against because of a mental disability, and under the Privacy Act, claiming that certain personal records were improperly used and disclosed by the Postal Service.

The defendants have filed a motion for summary judgment to affirm the ruling of the MSPB and a separate motion for summary judgment on plaintiffs Rehabilitation and Privacy Act claims. Plaintiff has also filed a motion for summary judgment on his Rehabilitation and Privacy Act claims. All motions have been opposed with the exception of defendants' motion for summary judgment to affirm the decision of the MSPB.

### Summary Judgments

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56. Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The responding party may not rest upon mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; FRCP 56(c).

Before it can find that there are no genuine issues of material facts, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990). Further, when a party seeking summary judgment bears the burden of proof at trial, as in this case, it must come forward with

evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial. *International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264 (5th Cir. 1991).

### The Decision of the Merit Systems Protection Board

Plaintiff sought review of the propriety of his discharge before the Merit Systems Protection Board. The MSPB eventually affirmed the action of the Postal Service in discharging plaintiff.[1] Plaintiff did not take an administrative appeal of the MSPB's ruling and, as a result, it became a final administrative decision. Defendants moved for summary judgment affirming the decision of the MSPB; plaintiff did not file an opposition to defendants' motion.

Defendants submit that this is a "mixed" case, "one in which the Plaintiff seeks judicial review of a decision rendered by the MSPB and also alleges that he has been the victim of some type of proscribed discrimination." *Memorandum in Support of Defendants' Motion for Summary Judgment Affirming Decision of MSPB,* p. 4. A review of plaintiff's complaint, however, leads this Court to find otherwise, to find that it lacks subject matter jurisdiction to address the MSPB decision, and to further find that if this Court does enjoy subject matter jurisdiction, that defendants lack standing to seek judgment *sua sponte* affirming the MSPB decision.

■ Judicial review of decisions of the MSPB is controlled by 5 U.S.C.A. § 7703 (West 1980 & Supp.1995). § 7703(a)(1) gives "[a]ny employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board" the right to obtain judicial review of the order or decision. Plaintiff originally filed this action *pro se.* His one-page original complaint does not mention any adverse administrative action by the MSPB but it does challenge the propriety of plaintiff's discharge. It could be argued under the liberal reading a Court is required to give a *pro se* complaint that review of the

MSPB decision would be a proper response to this complaint.

However, plaintiff subsequently retained counsel on his behalf. His attorney was allowed to file what is styled as a "First Amended and Supplemental Complaint for Damages and Injunctive Relief." The required jurisdictional statement contained in the amended complaint states that

This is an action to recover damages under the Rehabilitation Act, 29 U.S.C. 794, and the Privacy Act, 5 U.S.C. 552a. Jurisdiction is vested in this Court by 29 U.S.C. 794a, 42 U.S.C. 2000e–16, 28 U.S.C. 1331, 28 U.S.C. 1339, 28 U.S.C. 1343, 5 U.S.C. 552a(g)(1), and 39 U.S.C. 401.

This amended complaint entirely superseded and took the place of the original complaint. *Clark v. Tarrant County, Texas,* 798 F.2d 736, 740 (5th Cir.1986) (in which amended complaint "was a wholly self-contained instrument setting out all of [plaintiffs'] claims"). Nowhere in the amended complaint does plaintiff request review of the MSPB decision. Without such a request this Court does not have the necessary jurisdiction to enter judgment on the MSPB decision.

Further, § 7703(d) gives the Director of the Office of Personnel Management a right to appeal but limits his or her venue to the United States Court of Appeals for the Federal Circuit. Nowhere does § 7703 give either an agency of the United States or the United States Postal Service the right to seek review of an MSPB decision. Absent such a grant, and in light of plaintiff's decision to not seek judicial review of the MSPB decision, the defendants simply do not have standing to seek judgment affirming the MSPB decision.

### The Rehabilitation Act Claim

The parties have each filed a motion for summary judgment on the issue of the defendants' liability under the Rehabilitation Act of 1973. *See* 29 U.S.C.A. § 701 (West 1985 & Supp.1995), *et seq.* In addition, both sides

---

1. The MSPB actually affirmed in part and reversed in part the actions of the Postal Service. The MSPB found that the Postal Service erred in placing plaintiff on enforced leave before his discharge but found that the discharge itself was proper.

have filed a response to the opposing motion. After careful consideration of the arguments made and, more importantly, the evidence offered in support of the motions and in response, this Court finds that plaintiff has failed to carry his burden of proof, that no issues of material fact exist as to plaintiff's claim, and that the defendants are entitled to judgment as a matter of law.

■ The Rehabilitation Act prohibits discrimination against otherwise qualified individuals with disabilities in programs that receive federal financial assistance and by agencies of the federal government, including the United States Postal Service.

■ To recover under the Act, plaintiff must prove that

(1) he is an "individual with a disability";

(2) he is "otherwise qualified" to perform the job at issue;

(3) he worked for the United States Postal Service; and

(4) he was adversely treated solely as a result of his disability.[2]

It is undisputed that plaintiff worked for the United States Postal Service. Plaintiff has further submitted, and the defendants do not contest, that he suffers from Post Traumatic Stress Disorder and hypertension which render him an "individual with a disability" as contemplated by the Rehabilitation Act.[3] *See Plaintiff's Statement of Uncontested Facts in Support of Motion for Partial Summary Judgment,* Nos. 3 & 4; *Defendants' Memorandum in Support of Motion for Summary Judgment,* p. 6; *Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment,* p. 1. Assuming for purposes of these motions that plaintiff is in fact an individual with a disability under the Act, this Court must then determine if the evidence submitted properly establishes plaintiff's status as a *"qualified* individual with a disability" under the Act.

A "qualified individual with a disability" is an individual with a disability who, "with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others" and who meets the experience and education requirements of the position. 29 C.F.R. § 1613.702(f) (1995).[4] The reasonableness of

---

2. 29 U.S.C.A. § 794 (West Supp.1995) provides in pertinent part:

No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity ... conducted by any federal agency or by the United States Postal Service. § 794 originally used the term "qualified individual with handicaps" but was amended in 1992 to substitute the word "disability" for "handicaps" in the original. *See* Pub.L. 102–569, §§ 102(p)(32) and 138(a).

3. An "individual with a disability" is defined as meaning any person who:

(i) has a physical or mental impairment which substantially limits one or more of such person's life activities;
(ii) has a record of such an impairment; or
(iii) is regarded as having such an impairment. 29 U.S.C.A. § 706(8)(B) (West Supp.1995). A "physical or mental impairment" as used in § 706(8)(B) includes "any mental or psychological disorder," 29 C.F.R. § 1613.702(b)(2) (1995), and working is included in the definition of "major life activity." 29 C.F.R. § 1613.702(c) (1995).

4. The regulatory scheme promulgated pursuant to this and other acts addressing the discrimination of disabled citizens in the public and private sector has resulted in a Gordian knot of regulations, jurisprudence, and, occasionally, confused citations to each. Both plaintiff and the defendants draw heavily from several cases in their respective arguments, particularly *School Board of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), *Chiari v. City of League City,* 920 F.2d 311 (5th Cir.1991), and *Chandler v. City of Dallas,* 2 F.3d 1385 (5th Cir.1993). The cases refer to several different areas of the Code of Federal Regulations in which the terms of the Rehabilitation Act are defined and the language from the cases as cited by the parties contains references to each of the different sections. Adding to the confusion is defendants' reference to 29 C.F.R. § 1614.203 as supplying the applicable definition of "handicapped person." *Defendants' Memorandum in Support of Motion for Summary Judgment,* p. 6. § 1614.203 also contains a definition of "qualified" as used in the Act.

*Arline, Chiari,* and *Chandler* each address the Act and its concomitant regulations as applied to entities receiving federal financial assistance, particularly the interpretation of 45 C.F.R. § 84 *et seq.* The court in *Chandler* also discusses the

an accommodation is determined by its impact; no agency is required to make a particular accommodation if it "can demonstrate that the accommodation would impose an undue hardship on the operation of its program." 29 C.F.R. § 1613.704(a) (1995). Under the standard by which a motion for summary judgment is to be considered, especially the burden imposed on the plaintiff by *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257 (5th Cir.1991), *supra*, this Court finds that it must grant the motion of the defendants and enter judgment on plaintiff's claim under the Rehabilitation Act.

Under *International Shortstop*, when a party seeking summary judgment bears the burden of proof at trial it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial. *Id.*, 939 F.2d at 1264. Plaintiff has submitted little to prove that he was capable of performing the essential functions of his job. Indeed, plaintiff has submitted nothing to show what the essential functions of his job actually were. He represents only that two supervisors, namely B.W. Hall and William B. Lemley, have admitted that plaintiff was performing the essential functions of his job satisfactorily. *Plaintiff's Memorandum*, p. 7; *Plaintiff's Opposition to Defendants' Motion*, p. 7.

■ However, after having read the portions of the depositions plaintiff contends supports his claim, this Court can not say that a reasonable trier of fact could find in his favor. None of the referenced testimony of Hall addresses the salient issue. Further, Lemley would not agree that he considered plaintiff a "satisfactory employee" *overall;* he only said that plaintiff was a "good employee" when plaintiff *first started* with the Postal Service. *Deposition of William B. Lemley*, p. 38, 1.22 through p. 40, 1.4. Plaintiff has simply failed to carry his burden of proof; his motion must be denied.

The defendants have established through plaintiff's own testimony that performing the essential functions of plaintiff's position as a mailhandler required the ability to work closely with others while loading, unloading, moving, and otherwise processing mail. *Deposition of Plaintiff*, p. 46, 1.8 through p. 48, 1.7; *Depos. Exhibit* Nos. 2 & 3. They have also established that this was a "time-sensitive" position that had an inherent degree of stress. *Id.*, p. 6, 1.6–11. None of this is opposed or refuted by the plaintiff.

Defendants have also established that plaintiff could not perform the essential functions of the mailhandler position. By the testimony of plaintiff's own treating psychiatrist, Dr. J. Roderick Hundley, plaintiff "has significant problems working in group settings" such as that at the post office. *Deposition of Dr. Hundley*, p. 27, 1.13–16. Further, Dr. Hundley felt that in light of the stress plaintiff was experiencing the postal service doctor drew a "reasonable conclusion" in determining that plaintiff should not have been working at the post office. *Id.*, p. 25, 1.21–p. 26, 1.1. Plaintiff does not challenge the contention of the defendants that his situation "affect[ed] the overall operation" of the post office. *Deposition of Supervisor Larry Fortson*, p. 11, 1.12–15.

The defendants have made it clear that there was no position available at the Monroe post office which would provide plaintiff with the quiet, solitary, and stress-free environment he needed in which to work. *Deposi-*

application of regulations promulgated to implement the Americans with Disabilities Act at 29 C.F.R. § 1630 *et seq*, although this appears to be in response to an argument advanced by the plaintiff in that case. This action differs from *Arline, Chiari,* and *Chandler* in that it challenges the action of the United States Postal Service as opposed to an entity receiving federal financial assistance. As such, the Court finds that those cases are not directly controlling but do provide substantial guidance.

29 C.F.R. § 1613.701(a) (1995) notes that the particular subpart of the Code of Federal Regulations in which it is found sets the policy of assuring nondiscrimination of individuals with physical or mental handicaps within federal agencies. § 1613.701(b)(2) makes the subpart apply to the United States Postal Service. § 1613.702(f) explains what "qualified" means in this context, and both sides have submitted that this section controls the determination of plaintiff's "qualified" status. *See Plaintiff's Memorandum in Support of Motion for Summary Judgment*, p. 5; *Defendants' Memorandum*, p. 7. The Court will draw any necessary definitions from the subpart of the C.F.R. in which § 1613.702 is found.

*tion of Postmaster Michael Smith*, p. 25, 1.8–22. Plaintiff's conclusory and unsupported statements to the contrary are insufficient to raise an issue as to this fact.

In light of the defendants' submissions and the failure of plaintiff to sufficiently counter them, this Court finds that there is no question of fact as to plaintiff's ability to perform the essential functions of his job: he could not do so absent extraordinary accommodations by the defendants. As the accommodations plaintiff required would impose an undue hardship on the operations of the Postal Service, this Court finds that the defendants are entitled to judgment dismissing plaintiff's Rehabilitation Act claim as a matter of law.

### The Privacy Act Claim

Plaintiff has also brought a claim against defendants for purported violations of the Privacy Act of 1974. *See* 5 U.S.C.A. § 552a (West 1977 & Supp.1995). Both sides have moved for summary judgment on this claim and opposed the other's motion. After careful study of the submissions, this Court finds that no issues of material fact exist as to this claim and that defendants are entitled to judgment as a matter of law.

■ The Privacy Act was enacted to "promote governmental respect for the privacy of citizens by requiring all departments and agencies of the executive branch and their employees to observe certain constitutional rules in the computerization, collection, management, use, and disclosure of personal information about individuals." *Johnson v. Department of Treasury*, 700 F.2d 971, 975 (5th Cir.1983), *citing* 1974 U.S.Code Cong. & Ad.News 6916, 6917. To achieve this end the Act limits the ability of an agency, including the Postal Service, to both collect and disclose personal information.

As noted above, there are no issues of material fact present; plaintiff simply challenges the legality under the Privacy Act of certain actions admittedly taken by the defendants. These actions are:

(1) the obtaining by Postmaster Michael Smith of medical records from plaintiff's private physician

(2) the release of plaintiff's medical records to Dr. Tony Young

(3) the receipt by Supervisor Don Vercher of a copy of the complete medical report of Dr. Rahn Sherman

(4) the receipt by Postmaster Michael Smith of a copy of the complete medical report of Dr. Rahn Sherman

(5) the maintenance by Mike Smith of a file on plaintiff which contained copies of plaintiff's medical report and a letter from plaintiff's doctor

Each will be addressed in turn.

■ Plaintiff contends that Postmaster Mike Smith violated the Act by obtaining a medical report from plaintiff's private physician, Dr. Roderick Hundley. *Plaintiff's Memorandum*, p. 20. The report was sought by the Postal for use in the "fitness for duty" examination that resulted in the termination of plaintiff. Smith obtained it via subpoena issued by the Postal Inspection Service after Dr. Hundley initially refused to provide the report to Smith.

Plaintiff does not contend that Smith received a copy of this report. Indeed, plaintiff could not, as the report was sent directly to the Postal Inspector which issued the subpoena who then forwarded the report to a Postal Service Medical Officer. *Declaration of Inspector Carleigh Leake*, p. 2–3. Plaintiff argues instead that the steps initiated by Smith to obtain the report violated the requirement of the Act that information be collected "to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges." *See* 5 U.S.C.A. § 552a(e)(2) (West 1977).

The report at issue stated that plaintiff could not function in a work environment and must retire. *Declaration of Postmaster Smith*, p. 8. Plaintiff made Smith aware of this report during a discussion between plaintiff and Smith about plaintiff taking voluntary disability retirement. *Id.* Smith requested that plaintiff provide him with a copy of the report, which plaintiff refused to do, prompting Smith to have a subpoena issued. *Id.* Plaintiff can not bootstrap his refusal to

provide information into a violation of § 552a(e)(2).

■ Plaintiff also contends that release by the Postal Service of his medical records to Dr. Tony Young was a violation of the Act. § 552a(b) contains a general restriction that no information be released without the written consent of an individual. However, the section also contains numerous exceptions to that proscription, including an exception when the disclosure is "for a routine use" of the information. § 552a(b)(3); *see also* 39 C.F.R. § 266.4(b)(2)(iii) (1995). "Routine use" is defined broadly as including "the use of such record for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C.A. § 552a(a)(7) (Supp.1995). Routine uses are also more narrowly described in the Code of Federal Regulations; 39 C.F.R. § 266.4(b)(2)(iii) (1995) explains that routine uses are "contained in the system notices published in the FEDERAL REGISTER." 54 Fed.Reg. 43652–01(2)(F) provides in part that records "may be disclosed to an expert, consultant, or other person who is under contract to the Postal Service to fulfill an agency function, but only to the extent necessary to fulfill that function." Further, at 54 Fed.Reg., p. 43687, the Postal Service lists other routine uses for medical records. These uses include disclosure "to an outside medical service ... pursuant to a contract with the USPS as part of an established Postal Service health program for the purpose of determining a postal employee's fitness for duty." *Id.*

Plaintiff's argument is that a violation occurred because Dr. Young was retained for a one-time exam of Plaintiff, that he was not under regular contract with the Postal Service to provide services as part of an established program to determine the fitness for duty of employees, and that Dr. Young was not a physician but a "consultative specialist." *Plaintiff's Memorandum,* p. 21. This contention is patently without merit. Dr. Young is a clinical psychologist who performed a fitness for duty examination on plaintiff. *Declaration of Postmaster Smith,* p. 10. Plaintiff has admitted Dr. Young was retained by the Postal Service, albeit "for a one-time exam of Plaintiff." *Plaintiff's Memorandum,* p. 21. This was clearly a proper disclosure.

■ Plaintiff's contentions that the receipt by Don Vercher and Mike Smith of a copy of the complete medical report of Dr. Rahn Sherman can be addressed together. As noted above, Smith is Postmaster of the Monroe Post Office; Vercher is Manager of Post Office Operations and is stationed in Shreveport, Louisiana and supervises Smith. *Deposition of Vercher,* p. 3. The report at issue was prepared by Dr. Rahn Sherman following a previous fit for duty examination and found that plaintiff was not fit for duty.[5] Both Vercher and Smith were provided a copy of the report.

Plaintiff argues that there was no authority for either Smith or Vercher to receive a copy of Sherman's report. This position overlooks § 552a(b)(1) and the positions Smith and Vercher occupy in the Postal System. § 552a(b)(1) allows disclosure "to those officers and employees of the agency ... who have a need for the record in the performance of their duties." Smith needed this information to determine whether plaintiff could perform the essential functions of his job, and, if plaintiff could not, what reasonable accommodations could be made, if any. *Declaration of Smith,* p. 7–8. Vercher was the approving official on this decision and, as such, needed the information to review Smith's decision. *Declaration of Vercher,* p. 5. The disclosure of plaintiff's medical report to Smith and Vercher was not in violation of the Privacy Act.

■ Plaintiff also submits that Smith maintained a file on plaintiff in his office in violation of the Privacy Act. This file contained notes Smith wrote to himself about plaintiff, grievances concerning plaintiff, a copy of Dr. Sherman's report, and a copy of a letter from Dr. Hundley addressing plaintiff's mental disability. *Deposition of Smith,* p. 13–24. This file was kept by Smith in his desk, separate from the other personnel files. *Id.,* p. 17 1.3–11.

5. The fit for duty examination which resulted in plaintiff's termination occurred in June, 1994.

Plaintiff argues that this file was in violation of 39 C.F.R. § 268.1(b) (1995) which provides in part that "No employee will maintain a secret system of records about individuals." This file, however, was kept in Smith's desk because of plaintiff's concerns about access to it and with his acquiescence:

Q. This is a completely separate file from other personnel files on other people in the Postal Service in Monroe?

A. Yes.

Q. All of the others go into a file cabinet that someone else had access to?

A. You see, Mr. Magee had some strong concerns about his file.

Q. Uh-huh.

A. And I assured him that I would keep it in my desk and that other people wouldn't have access to it. That's why it was in my desk, plus this was an ongoing thing.

*Deposition of Smith*, p. 16, 1.25–p. 17, 1.11. On these facts, Smith's maintaining plaintiff's file separate from those of the other employees can not be held to be a violation of the Act. Smith's attempt to alleviate plaintiff's concerns about access to his file, with plaintiff's apparent ratification, does not fall within the proscriptions of maintaining a "secret file" under the Act.

The parties are in agreement as to the facts underlying plaintiff's Privacy Act claim. The disputes lie only in the resolution of the legal issues presented, all of which must be resolved in favor of the defendants. As such, the defendants are entitled to summary judgment dismissing plaintiffs claims arising under the Privacy Act.

## ORDER

IT IS ORDERED that the motion for summary judgment affirming the decision of the Merit Systems Protection Board filed by defendants be denied for lack of jurisdiction;

IT IS FURTHER ORDERED that the motion for partial summary judgment for violations of the Rehabilitation Act and Privacy Act filed by plaintiff be denied;

IT IS FURTHER ORDERED that the motion for summary judgment with regard to

plaintiff's claim of handicap discrimination and alleged violations of the Privacy Act filed by defendants be granted in its entirety and that plaintiff's claims be dismissed with prejudice.