25 F.3d 1037
 3 A.D. Cases 704
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
William MARINO, Plaintiff, Appellant,
v.
UNITED STATES POSTAL SERVICE, ET AL., Defendants, Appellees.
 No. 93-1958
 United States Court of Appeals,
First Circuit.
 May 27, 1994
 
 Appeal from the United States District Court for the District of Massachusetts [Hon. Edward F. Harrington, U.S. District Judge ]
 Cornelius J. Sullivan with whom Brenda E.W. Sullivan and Sullivan & Walsh were on brief for appellant.
 D.Mass.
 AFFIRMED.
 Before Selya, Boudin and Stahl, Circuit Judges.
 STAHL, Circuit Judge.
 
 
 1
 Plaintiff-appellant William Marino, brought this action against his former employer defendants-appellees United States Postal Service (the "USPS") and Marvin T. Runyon, Postmaster General of the United States of America ("Runyon"), in the district court under section 501 of the Rehabilitation Act of 1973 ("the Act"), 29 U.S.C. Sec. 791 et seq. His complaint alleged that the USPS discriminated against him, improperly discharging him by reason of his mental illness. Marino now appeals the district court's grant of summary judgment in favor of the USPS and Runyon. We affirm.
 
 I.
 FACTUAL BACKGROUND AND PRIOR PROCEEDINGS
 
 2
 Because this is an appeal from a grant of summary judgment, we review the facts in the light most favorable to the nonmovant, indulging all reasonable inferences therefrom in the nonmovant's favor. See, e.g., Reich v. Simpson, Gumpertz and Heger, Inc., 3 F.3d 1, 2 (1st Cir. 1993). William Marino is a Vietnam veteran who received a 50% service-connected disability for anxiety neurosis from the Veterans Administration in 1973. In 1974, the USPS hired Marino and he served the majority of the next seventeen years as a clerk at the USPS Air Mail Facility at Boston, Massachusetts' Logan Airport. Throughout this period, Marino was under the care of mental health professionals at the Veterans Administration and at various private facilities. In addition, Marino submitted to and passed three "fitness for duty" examinations at the USPS. In 1983, a recommendation was made that whenever Marino felt stressed, he be permitted to leave his work station and scream in the men's room until his stress was relieved. Marino never availed himself of this outlet.
 
 
 3
 In April 1990, USPS Supervisor Wilfred Lessard was assigned to the area where Marino worked. On July 3, 1990, Lessard gave Marino a series of direct work orders, which Marino ignored. Lessard noticed that Marino appeared to be mumbling and wandering away. Marino asked to see a union steward with whom he spoke. Marino then presented Lessard with a medical form upon which he had written, "Diress [sic] again still!!!" Lessard signed the form, which permitted Marino to go to the USPS's medical unit. Marino spent approximately ninety minutes in the medical unit before leaving for the day.
 
 
 4
 Lessard and Marino had another run-in just six days later. On July 9, 1990, Lessard came upon Marino and three other USPS workers who were sitting at a break table in what is referred to as the CAB sunset area. Lessard asked the employees to return to their stations and begin to process the mail. Marino complied by returning to the computer station where he unplugged the computer control board and began to clean the board and console. After several minutes, Lessard asked Marino if he was finished. Marino said, "No." Lessard replaced Marino with Carol Nappi who began to process the mail at the computer. Lessard then assigned Marino a variety of tasks which Marino refused to perform. Instead, Marino sat down at the break table and began, as he later described it, to "phase out" and mumble. When asked by Lessard whether he understood his orders, Marino did not respond. Lessard told Marino that if he did not return to work that Lessard would "take him off the clock" and send him home. Marino again did not respond. Lessard repeated his order. Faced with Marino's silence, Lessard told Marino he was off the clock and ordered Marino to leave the premises. Marino later testified that at this point he was "going off to a different state of mind altogether. I didn't have any control at that point."
 
 
 5
 Although Marino claims that he has no memory of what happened next, he does not dispute that he slammed his fist on the table, rose and charged Lessard, punching him in the face and head several times until USPS Supervisor Joseph Flammia came to Lessard's assistance. At this time, Marino left the facility. Hours after the altercation, Marino sought psychiatric counselling at the Veterans Administration Hospital in Bedford, Massachusetts, where he saw Dr. Hugh Smith for the first time in the emergency walk-in clinic. In the meantime, Lessard was sent to Winthrop Hospital for treatment of his injuries, returning to work one week later.
 
 
 6
 On September 14, 1990, Marino was terminated from his position with the USPS. He was officially removed for assaulting a supervisor in violation of the USPS rules and regulations[1] and for posing a safety hazard to other employees.
 
 
 7
 Marino filed an EEOC complaint after the assault and before his removal, and then he exercised his right to a hearing before the Merit Systems Protection Board ("MSPB"). In December 1991, the MSPB affirmed the removal, finding, inter alia, that Marino had failed to make out a prima facie case of discrimination under the Rehabilitation Act of 1973 as amended, 29 U.S.C. Secs. 702, et seq. Marino subsequently filed this action in the United States District Court for the District of Massachusetts alleging handicap discrimination in violation of the Rehabilitation Act. On April 26, 1993, the USPS and Runyon filed motions to dismiss and for summary judgment. In a Memorandum and Order dated June 29, 1993, the district court granted their motion for summary judgment finding that Marino had failed to make a prima facie showing of handicap discrimination. It is from this ruling that Marino now appeals.
 
 II.
 STANDARD OF REVIEW
 
 8
 As always, we review motions for summary judgment de novo. We read the record indulging all inferences in a light most favorable to the nonmovant. Alan Corp. v. International Surplus Lines Ins. Co., No. 93-1697, slip op. at 6 (1st Cir. Apr. 22, 1994). Summary judgment is appropriate only when a review of the record discloses that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Finally, on appeal, we are not bound by the finding of the district court, but rather may "affirm a district court's ruling 'on any ground supported in the record even if the issue was not pleaded, tried or otherwise referred to in the proceeding below.' " Levy v. FDIC, 7 F.3d 1054, 1056 (1st Cir. 1993) (quoting De Casenave v. United States, 991 F.2d 11, 12 n. 2 (1st Cir. 1993) (citations omitted)).
 
 III.
 DISCUSSION
 
 9
 Marino, in his complaint, charged that the "action by Supervisor Lessard on July 3, 1990, and again on July 9, 1990, was either part of a concerted action by management to provoke an employee whom management knew suffered from a nervous condition and did not handle stress well or presented management with an opportunity to remove the plaintiff because of the inexperience of Supervisor Lessard" and in violation of the Rehabilitation Act. USPS and Runyon argued in their motion for summary judgment that Marino did not present sufficient facts to support a prima facie case of handicap discrimination.
 
 
 10
 Under the Rehabilitation Act, the claimant bears the burden of proving each element of his/her claim. See Cook v. State of Rhode Island, 10 F.3d 17, 22 (1st Cir. 1993). In order to establish a prima facie case of handicap discrimination against a federal agency under Sec. 501 of the Rehabilitation Act, the plaintiff must prove: (1) that s/he was a handicapped person within the meaning of the Act; (2) that s/he was an otherwise qualified handicapped person; and (3) that s/he was excluded or terminated from the position s/he sought solely by reason of her/his handicap. 29 U.S.C. Sec. 794(a);[2] Russell v. Frank, 59 Fair Empl. Prac. Cas. (BNA) 1585 (1991).
 
 
 11
 We assume, without deciding, that Marino has met prongs (1) and (3) of the prima facie case, and focus our attention on whether Marino has shown that he is otherwise qualified to perform the essential functions of his job.
 
 
 12
 Federal regulations define a "qualified handicapped person" as one who, "with or without reasonable accommodation, can perform the essential function of the position in question without endangering the health and safety of the individual or others." 29 C.F.R. Sec. 1613.702 (1993) (emphasis supplied). The record shows that Marino is not such a "qualified person." In sum, we agree with the findings of the administrative judge who reviewed this case for the MSPB. She concluded that:
 
 
 13
 An agency must be able to give its employees instructions and expect them to comply without putting the supervisor at physical risk. In the appellant's circumstances, the supervisor would have to anticipate that the appellant was calm and receptive to an order before giving it. He would also have to be assured that the appellant would agree with the order. Otherwise, the supervisor might be at risk.... Accordingly I find, assuming arguendo, that he is a handicapped person and that his condition caused the misconduct, that he has failed to establish a prima facie case because he has not articulated a reasonable accommodation under which he could perform the essential duties of his position.
 
 
 14
 Marino v. United States Postal Serv., M.S.P.B. Docket No. BN0752910292I1, slip op. at 7 (Dec. 10, 1991). Marino suggests as a reasonable accommodation that he be protected from stress- producing situations at work. Such an accommodation, however, has been deemed unreasonable as a matter of law. See Pesterfield v. Tennessee Valley Authority, 941 F.2d 437, 442 (6th Cir. 1991) ("It would be unreasonable to require that [the employer] place plaintiff in a virtually stress-free environment and immunize him from any criticism in order to accommodate his disability.").
 
 
 15
 As a final matter, Marino contends that the penalty of termination was too severe and that he should be reinstated. Although review of MSPB decisions involving non-discrimination claims are generally the exclusive domain of the Federal Circuit, see 5 U.S.C. Sec. 7703(b)(1), where the non- discrimination claim is accompanied by an allegation of discrimination, we have jurisdiction to review both claims, see Williams v. Rice, 983 F.2d 177, 179-80 (10th Cir. 1993). Non- discrimination claims are reviewed on the administrative record and a MSPB finding shall be set aside only if it is found to be arbitrary or capricious, an abuse of discretion, obtained without procedures required by law, or unsupported by substantial evidence. Id.; see also 5 U.S.C. Sec. 7703(c) (1994); Diaz v. United States Postal Serv., 853 F.2d 5 (1st Cir. 1988).
 
 
 16
 We need not tarry long on this argument because all of the relevant considerations raised by Marino on appeal were properly identified and weighed by the MSPB, as evidenced by the following excerpt from its December 10, 1993 ruling:
 
 
 17
 Balancing the very serious nature of the appellant's misconduct, his prior disciplinary record of a Letter of Warning for insubordination, his prior problems with supervisors, the lack of provocation for his attack and the nature of the injuries inflicted against the absence of any weapons, the appellant's 17 years of satisfactory service and his medical condition of anxiety disorder and depression, I cannot find that removal exceeds the bounds of reasonableness.
 
 
 18
 Marino, M.S.P.B. Docket No. BN0752910292I1, slip op. at 11. Moreover, we fail to see how Marino's sole authority, Quinata v. United States Postal Serv., 51 M.S.P.R. 76 (1991), supports his charge that the MSPB abused its discretion in reaching its conclusion that the USPS acted reasonably. In Quinata, the MSPB found that the penalty of removal of a USPS employee was "overly severe" where the supervisor: (1) routinely harassed the employee for months before the incident; (2) "grab[bed] his groin and 'flip[ped] off' " the employee; (3) taunted the employee; (4) blocked the employee's way when he attempted to leave a meeting; and (5) participated in the physical alteration by striking and shoving the employee. Id. at 58. None of these facts are present in the case before us. Clearly the MSPB weighed all of the relevant considerations and found the USPS penalty to be reasonable. We have no lawful grounds on which to disturb the MSPB's findings in this issue. 5 U.S.C. Sec. 7703(c).
 
 V.
 CONCLUSION
 
 19
 For the foregoing reasons, the order of the district court granting summary judgment in favor of the USPS and Runyon is
 
 
 20
 Affirmed.
 
 
 
 [1]
 USPS claimed that Marino violated the following rules and regulations: Employee and Labor Relations Manual Sec. 661.51-Unacceptable Conduct (no employee will engage in criminal, dishonest, notoriously disgraceful or immoral conduct, or other conduct prejudicial to the Postal Service); Sec. 666.1-Discharge of Duties (employees are expected to discharge their assigned duties); Sec. 666.2-Behavior and Personal Habits (employees are expected to conduct themselves during and outside of working hours in a manner that reflects favorably on the Postal Service and are expected to maintain satisfactory personal habits so as not to be obnoxious or offensive to other persons or the create unpleasant working conditions); Sec. 666.51-Protests (employees must obey the instructions of their supervisors; and if the employee has reason to question the propriety of the instruction, he must first obey the order and then file a written protest); and the Administrative Support Manual Sec. 224.12-Assault (physical assault of a postal employee engaged in the performance of official duties can result in prosecution and may be the basis for disciplinary action)
 
 
 [2]
 Section 504 of the Rehabilitation Act provides in relevant part that:
 No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
 29 U.S.C. Sec. 794(a).