Gerald G. FLORENCE, Plaintiff,

v.

Marvin T. RUNYON, Postmaster General, United States Postal Service, Defendant.

No. CA 3–95–CV–1396–D.

United States District Court, N.D. Texas, Dallas Division.

Nov. 12, 1997.

Noemi Alessandra Collie, Law Office of Noemi A. Collie, Dallas, TX, for Plaintiff.

Stafford Hutchinson, U.S. Atty's Office, Dept. of Justice, Dallas, TX, for Defendant.

### FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE ■

BOYLE, United States Magistrate Judge.

Before the court is the **Defendant's Motion for Summary Judgment** filed December 16, 1996. This motion was referred to the undersigned Magistrate Judge for recommendation pursuant to the District Court's Order of Reference filed on June 24, 1997. Having reviewed the pleadings and the evidence submitted by the parties in connection with the motion, the undersigned recommends that the motion be **Denied** in its entirety as follows:

■ This is a suit by Gerald G. Florence against his employer, the Postmaster General of the United States Postal Service[1] ("Postal Service") alleging handicap[2] discrimination under § 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 et seq., ("the Act") and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3 ("Title VII"). This case centers on an unwanted transfer plaintiff received in December, 1990. Florence, a limited duty employee of the Postal Service, claims that the transfer was based on his handicap and in retaliation for his previously filed EEO's.

The Postal Service has moved for summary judgment contending for several reasons that judgment must be entered in its favor in this case. First, with respect to Florence's claim of handicap discrimination under the Rehabilitation Act, the Service argues that Florence is not an "otherwise qualified" individual under the Act because he is unable to perform his duties as a letter carrier. Should the court find that plaintiff is "otherwise qualified, the Postal Service next maintains that it has articulated a legitimate nondiscriminatory reason for his transfer. As to Florence's Title VII retaliation claim, the Service argues that the challenged transfer does not constitute an "adverse employment action," an essential element of his retaliation claim.[3] Each of these issues will

---

1. The Postmaster General is the only proper defendant in a Title VII action against the Postal Service. *Lamb v. United States Postal Service*, 852 F.2d 845, 846 (5th Cir.1988). However, for clarity, the court will refer to the defendant as the "Postal Service"

2. In 1992 the Rehabilitation Act was amended to incorporate several sections of the Americans with Disabilities Act. (42 U.S.C. § 12101, et seq.) See *Mengine v. Runyon*, 114 F.3d 415, 420 & n. 4 (3rd Cir.1997). The acts underlying this suit occurred prior to the 1992 amendments. In the amended Act the term "individual with a disability" has been substituted for the original term "individual with handicaps". Because the acts underlying the case occurred prior to these amendments the court will utilize the superceded terminology. *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 n. 7 (5th Cir.1993).

3. The Postal Service also moves for summary judgment on Florence's request for out-of-schedule pay and mileage. Because the briefing by both sides on this issue is scant and because the undersigned is recommending that this motion

be addressed at length by the undersigned but, first, a review of relevant background facts is necessary.

*Factual Summary* [4]

Plaintiff, Gerald G. Florence, is a 41 year-old employee of the Postal Service hired on July 6, 1985, as a letter carrier.[5] In 1986, he suffered an on-the-job back injury in an automobile accident after which he could no longer perform all the duties of a letter carrier. Thereafter, he was assigned to limited duty at various stations.[6] On March 28, 1989, he received a limited duty assignment to the Highland Hills Station in Dallas.[7] He was not required to carry mail at Highland Hills.[8] In December, 1990, Florence was transferred from Highland Hills to the Brookhollow Station against his will. The transfer altered his scheduled work hours, his duties and lengthened his travel time to work.[9] Florence's job description, benefits, and salary, however, were not affected by the transfer.[10] According to Florence, the transfer came about after his supervisor, Clyde Henderson, asked him to change his restrictions so that he could carry mail at Highland Hills.[11] Florence contends, he was transferred to the Brookhollow Station after he failed to change his restrictions.[12] The Postal Service rejoins that the reason for Florence's transfer to Brookhollow was not his handicap but the lack of available work for the limited duty employees at Highland Hills.[13] The Service also states that in November, 1990 Florence's restrictions were changed so that he could carry mail and he refused to carry out this responsibility.[14] .

In July, 1993, Florence was transferred back to his modified job assignment at Highland Hills.[15]

Against this factual backdrop, the Court turns to its analysis of the defendant's motion beginning with a review of the relevant summary judgment standards.

*Summary Judgment Standards*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material facts exists and that, as a matter of law, the movant is entitled to judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only disputes about those facts will preclude the granting of summary judgment. *Id.*

The burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Laboratories*, 919 F.2d 301, 303 (5th Cir.1990). If the non-movant bears the burden of proof at trial, the movant for summary judgment need not support the motion with evidence negating the opponent's case; rather, the movant may satisfy its burden by showing that there is an absence of evidence to support the non-movant's case. *Id.*; *Little*, 37 F.3d at 1075.

Once the movant makes this showing, the burden shifts to the non-movant to show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548,

---

be denied in whole, the issue of out-of-schedule pay and mileage will not be addressed.

4. Unless characterized as a contention, the facts set forth in the factual summary above are undisputed.

5. Def.'s Mot. For Summ. J., Ex. 13, Pl.'s Dep. ("Pl.'s Dep.") at 3, 4.

6. Id. at 6–15.

7. Def.'s Mot. For Summ. J., Pl's Dep. Ex. 3.

8. Pl's. Resp., Att. 1, Ex. A.

9. Pl's Dep. at 16, 70, 73–4, Ex. 3

10. Def.'s Reply, Ex. A.

11. Pl.'s Dep. at 18, 19, 54—57.

12. Pl's. Resp. Att. 1, Florence's Affidavit, ("Florence Aff.").

13. Def.'s Mot. for Summ. J. Ex. 14, Henderson's Affidavit. ("Henderson Aff.") at ¶3, Ex. 15, Walder Affidavit ("Walder Aff.") at ¶5, Ex. 17, Lewis Affidavit ("Lewis Aff.") at ¶5.

14. Henderson Aff.

15. Def.'s Mot. For Summ. J., Ex. 10 at 4, Pl's. Dep. at 3.

2553–54, 91 L.Ed.2d 265 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' ... by 'conclusory allegations,' ... by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 871–73, 110 S.Ct. 3177, 3180, 111 L.Ed.2d 695 (1990); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir.1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), respectively). Rather, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (quoting FED. R. CIV. P. 56(e)). In determining whether a genuine issue for trial exists, the court must view all of the evidence in the light most favorable to the non-movant. *Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 292 (5th Cir.1990) (citing *Bodnar v. Synpol, Inc.*, 843 F.2d 190, 192 (5th Cir.), *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986)).

With these summary judgment standards as a guide, the court turns to its task of analyzing each of the defendant's arguments.

*Rehabilitation Act*

The Postal Service moves for summary judgment on plaintiff's claims of handicap discrimination on two grounds. First, the Service claims that Florence cannot meet his burden of establishing a prima facie case under the Rehabilitation Act because he is not "otherwise qualified" for his job. Secondly, the defendant urges that even if the court finds Florence qualified, that it has articulated a non-discriminatory reason for his transfer. Each of these arguments will be addressed in turn, however, the court must first determine the appropriate legal standards to apply to plaintiff's Rehabilitation Act claims.

1. *Standards Under § 501*

Florence brings this suit under § 501 of the Act, codified at 29 U.S.C. § 791, and not pursuant to § 504, codified at 29 U.S.C. § 794. Because the law regarding the elements of proof necessary under a § 501 suit are not well-settled under the existing authority and because the courts have occasionally utilized § 504 standards in § 501 cases, a brief discussion of both sections is necessary.

"Section 501 of the Rehabilitation Act of 1973 provides for the establishment of an affirmative action program for the employment of handicapped individuals within the United States Postal Service." *de la Torres v. Bolger*, 781 F.2d 1134, 1135 (5th Cir.1986) citing 29 U.S.C. § 791(b). Section 504 of the Act prohibits discrimination against any "'otherwise qualified handicapped individual...as defined in section 706(7)..., solely by reason of his handicap...'" *Id.*, citing 29 U.S.C. sec. 794.

■ As originally drafted, the Rehabilitation Act did not specifically contain authority permitting suits against federal agencies for violations of its provisions. *Prewitt v. United States Postal Service*, 662 F.2d 292, 302 (5th Cir.1981) In 1978 the Act was amended to provide a cause of action for handicapped individuals against the federal government and its agencies under both sections 501 and 504. *Prewitt*, 662 F.2d at 301–04; *Spence v. Straw*, 54 F.3d 196, 199 (3rd Cir.1995). Federal agencies, including the Postal Service, may be sued under either provision of the Act. *Bolger*, 781 F.2d at 1135 n. 1; *Spence*, 54 F.3d at 199–200.

The 1978 amendments provided that suits under § 501 should be patterned after Title VII of the Civil Rights Act of 1964, whereas claims under § 504 should be patterned upon Title VI of the Civil Rights Act of 1964. *Bolger*, 781 F.2d at 1135 citing 29 U.S.C. § 794a(a)(1) & (2).[16]

■ While the 1978 amendments to the Act establish that the Postal Service may be sued for handicap discrimination under § 501 or § 504, the extent to which the elements proof under each section coincide is not so

---

**16.** See *Prewitt*, 662 F.2d at 301–04, for an in-depth discussion of the 1978 amendments to the Rehabilitation Act and the partial overlap between Senate and House amendments.

clear. It is settled that under § 504, a plaintiff must establish the following elements to prove his prima facie case: (1)that he is an individual with a handicap; (2) that he was otherwise qualified to perform the position in question; (3) that he worked for the United States Postal Service; and (4) that he was adversely treated solely because of his handicap. 29 U.S.C. § 794; *Magee v. United States Postal Service,* 903 F.Supp. 1022, 1026 (W.D.La.1995) *see also Chandler v. City of Dallas,* 2 F.3d 1385, 1389–90 (5th Cir.1993)(a § 504 **claim against a recipient of federal funds**)

In contrast, under § 501, the elements of a prima facie case do not appear in the statute and are not settled under the case authority. See 29 U.S.C. § 791(b). And no court has squarely addressed the issue of the proper *prima facie* elements for a § 501 claim. In recognizing the dearth of authority, on the issue of § 501's prima facie elements, the Tenth Circuit stated"[n]either we nor any other circuit has established the elements of a prima facie case in a § 501 action." *Williams v. Widnall,* 79 F.3d 1003, 1005 & n. 4 (10th Cir.1996). Compounding the confusion, some courts, without comment, have utilized § 504's prima facie elements in § 501, cases blurring any distinction between the provisions. See *Boldini v. Postmaster General, U.S. Postal Service,* 928 F.Supp. 125, 130 (D.N.H. 1995); *Marino v. United States Postal Service,* 25 F.3d 1037, 1994 WL 224161 (1st Cir.1994).

■ Despite the lack of clarity on § 501's prima facie elements, there appears to be little dispute that § 501, as with § 504, requires both a showing that the plaintiff is handicapped and is otherwise qualified to perform the essential functions of his job.

See *Leary v. Dalton,* 58 F.3d 748, 752–53(1st Cir.1995)(noting that any claim under the Rehabilitation Act requires a showing that the plaintiff is disabled and is qualified with or without reasonable accommodation to perform the essential functions of the position in question.); *Williams,* 79 F.3d at 1005–06( same); *Bolger,* 781 F.2d at 1135–36. That these first two elements are requirements under § 501 is further bolstered by the implementing regulations in effect at the time of plaintiff's transfer. See 29 C.F.R. § 1613.703(1990) ("An agency shall not discriminate against a *qualified* physically or mentally *handicapped* person") (emphasis added).[17]

■ Where the two provisions appear to diverge is on the element of causation. Under § 504, the statute explicitly requires a plaintiff to establish that the adverse employment action was *solely* due to plaintiff's handicap. 29 U.S.C. § 794; *Kelly v. Boeing Petroleum Services, Inc.* 61 F.3d 350, 364 (5th Cir.1995) (in reference to 29 U.S.C. § 794, "the federal statute proscribes discrimination ....only when disability is the sole motivating factor."); *Leckelt v. Board of Commissioners of Hosp. Dist. No. 1,* 909 F.2d 820, 825 (5th Cir.1990).

Section 501's causation requirement is less settled.[18] *Leary,* 58 F.3d at 752(noting that it is unclear whether §§ 504 and 501 require the same showing of causation but resolving the case without deciding the issue); See also *Williams,* 79 F.3d at 1005, n. 4 (recognizing but not resolving the issue of whether a § 501 plaintiff must show that his disability was *the* cause or *a* cause of termination); See also *Lussier v. Runyon,* 1993 WL 434078 (D.Me. 1993) *1 (noting a disagreement be-

---

17. In August, 1995 the EEOC issued a final rule removing as obsolete 29 C.F.R. § 1613 which had been superseded by 29 C.F.R. § 1614. See Final Rule, 60 Fed.Reg. 43371 (1995); Final Action, 60 Fed.Reg. 60722 (1995). The applicable regulation presently in effect contains almost identical language as its predecessor. 29 C.F.R. § 1614.203(b)(1996).("An agency shall not discriminate against a qualified individual with physical or mental handicaps").

18. Adding to the confusion is the 1992 amendments to the Rehabilitation Act which incorporate the liability standards of the ADA. The ADA

contains a "because of" causation standard and some courts have interpreted this as not requiring a showing of sole causation. *Leary,* 58 F.3d at 752; *McNely v. Ocala Star–Banner Corp.* 99 F.3d 1068, 1073–77 (11th Cir.1996); *Hendler v. Intelecom USA, Inc.,* 963 F.Supp. 200, 204 n. 1 (E.D.N.Y.1997); but see *Rizzo v. Children's World Learning Centers,* 84 F.3d 758, 760 (5th Cir.1996) (utilizing a sole causation standard in an ADA case). However, in this case the acts underlying the suit occurred before the 1992, thus, those changes to the Act do not affect this analysis.

tween the parties over whether § 504's sole causation standard applies in a § 501 case and adopting the more demanding § 504 standard.).

In short, it is not entirely clear whether § 504's sole causation requirement applies to § 501 cases. However, in this case, despite the confusion in the authority over this issue, the court finds that it is not necessary to resolve the question for purposes of this summary judgment analysis because under sole causation or another more lenient standard there are material fact questions on causation which preclude summary judgment.[19]

To summarize, although the precise elements necessary to prove a violation § 501 are not entirely clear, it does appear that in order to prove the prima facie elements of his § 501 claim, plaintiff must establish both that he is handicapped and that he is otherwise qualified with or without reasonable accommodation to perform the essential functions of his job. On the issue of causation, whether he must show that his handicap was the *sole* cause or *a* cause for his transfer is not clear from the cases or the statute, however, the Court need not resolve this issue because, as will be discussed, under either standard plaintiff's claim survives summary judgment. Having determined the relevant standard of proof for plaintiff's § 501 claim, the Court now turns to the merits of the summary judgment arguments.

### 2. *"Otherwise Qualified"*

The Postal Service does not dispute Florence's handicap, rather focuses first on his qualifications to perform his job. The Ser-

vice contends that Florence is unable to perform the essential functions of the letter carrier position for which he was hired and, consequently, is not "otherwise qualified" under the Rehabilitation Act. Florence, on the other hand, does not dispute that he cannot perform the duties of a letter carrier. Instead, he urges that his qualifications to perform his job should be measured against the duties of the modified job assignment he was performing when the transfer occurred. In determining whether Florence can hurdle this initial summary judgment issue on whether he is qualified under the Act, the court must first determine *which* job he must be otherwise qualified to perform.

An "otherwise qualified individual" is defined as an individual who "with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others" "and who meets the experience and education requirements of the position." *Magee*, 903 F.Supp. at 1026 *citing* 29 C.F.R. § 1613.702(f) (1995); *see also Chandler*, 2 F.3d at 1393 *citing Chiari v. City of League City*, 920 F.2d 311, 317 (5th Cir.1991).[20]

■ If the court determines that a plaintiff is unable to perform the essential functions of his job, the issue becomes whether any reasonable accommodation by the employer would enable the employee to perform the job functions. *Guneratne v. St. Mary's Hosp.*, 943 F.Supp. 771, 774 (S.D.Tex.1996) citing *Chandler*, 2 F.3d at 1393–94. If no reasonable accommodation is possible then the individual is not otherwise qualified. *Id.*[21]

Recognizing this, the court, however, cites to certain cases that may involve § 504 instead of § 501 or may involve an entity that receives federal financial assistance as opposed to the United States Postal Service. However, while the court understands the distinctions, it finds in those instances where it has relied on these cases that they provide "substantial guidance" on the issues for which they are cited. Id.

**19.** As will be discussed in the section on pretext, the "determinative factor" standard of causation is the standard utilized in Title VII cases and will be used in the analysis in that section. As already mentioned § 501 is patterned after Title VII. *Prewitt*, 662 F.2d at 302–04

**20.** As has been discussed in connection with plaintiff's § 501 claim, the statutory and case authority regarding handicap discrimination is, in some areas, confusing and overlapping. This has caused one jurist to describe the situation as presenting a "Gordian knot of regulations, jurisprudence, and, occasionally, confused citations to each." *Magee v. United States Postal Service*, 903 F.Supp. 1022, 1027 n. 4 (W.D.La.1995).

**21.** In its motion for summary judgment, in connection with its argument that Florence is not qualified, the Service briefly contends that Florence is attempting to force the Service to accommodate him in the position of a letter carrier. However, for reasons that will become apparent

The issue of *what* position a plaintiff must be otherwise qualified to perform to entitle him to invoke the protection of the Rehabilitation Act, has been addressed by different courts with varying results. Some courts have found that once an employee has been offered and accepted light duty work [22] the relevant inquiry for determining whether he is otherwise qualified is his ability to perform essential functions of the light duty work and not the position for which he was originally hired. *Karnes v. Runyon,* 912 F.Supp. 280, 286 (S.D.Ohio 1995)(where plaintiff unable to perform her original "keyer clerk" position, the court found that her qualifications should be measured against the "post-surgery" job she held at the time of the alleged discrimination) *citing Valdez v. Albuquerque Public Schools,* 875 F.Supp. 740 (D.N.M.1994) and *Taylor v. Garrett,* 820 F.Supp. 933 (E.D.Pa. 1993) (the position plaintiff held at the time of the alleged discrimination is more appropriate for determination of whether she "can perform the essential functions of the job in question").

In *Garrett,* the court found that because the Navy had offered the plaintiff light duty work, which he had to accept to maintain workers' compensation eligibility—and the plaintiff thereafter challenged his separation from the light duty work, the relevant inquiry was his qualifications to perform the light duty work in which he was engaged when the alleged discrimination occurred. *Garrett,* 820 F.Supp. at 938. In so holding, the *Garrett* court reasoned that if the court were to

"accept the Navy's rigid definition of the 'position in question', an employer who chose to reassign an employee to light-duty work who had become unable to perform his original job would have an unsettling 'carte blanche' power over the employee." *Id.*

Other courts, have rejected plaintiffs' light duty jobs as the basis for their qualifications, however, these courts have primarily focused on the temporary nature of the light-duty jobs at issue, finding that the duties of a temporary assignment should not form the basis for gauging a plaintiff's qualifications for the job in question. See *Sidaris v. Runyon,* 967 F.Supp. 1260, 1267–68, & n. 3 (M.D.Ala.1997) (court found plaintiff's temporary light duty position was not the appropriate position for which her qualifications should be judged). See also *Shiring,* 90 F.3d at 831–32 (in rejecting plaintiff's suggestion that he was qualified for his temporary 'casing' position which was not an official position the court stated: "it follows that the district court did not err in refusing to consider the non-existent position of 'caser' as an accommodation that would make *Shiring* qualified").

To support its argument, that Florence's official position and the job for which he must be qualified is that of a letter carrier, the defendant provides personnel records which establish that Florence has been officially designated a "letter carrier" throughout his employment with Postal Service.[23]

in this section, the court finds that accommodation is not an issue in this summary judgment analysis.

**22.** The court recognizes that the Postal Service distinguishes between light duty and limited duty. "Limited duty" is available to those workers injured on the job, while "light duty" is available to employees whose injuries are not employment-related. More specifically, light duty refers to assignments given incapacitated employees under a collective bargaining agreement, while "limited duty" refers to assignments given under Labor Department regulations. *Ensley–Gaines v. Runyon,* 100 F.3d 1220, 1222 (6th Cir.1996). For purposes of the discussion of *which* job should be used to determine plaintiffs qualifications, the court finds the distinction between limited duty and light duty to be immaterial.

**23.** The Postal Service also relies on the undersigned's findings in Florence's previous case *Florence v. Frank,* reported at 774 F.Supp. 1054 (N.D.Tex.1991), to support its argument that plaintiff's qualifications should be determined based on his official position of letter carrier. However, there are distinctions between this case and the previously litigated case which preclude comparison between the two. In *Florence v. Frank,* plaintiff challenged a transfer from the Highland Hills station to the Northlake station in August, 1987. Plaintiff's argument in that case was that he *could* perform the essential functions of the *letter carrier's position* he had bid on and been awarded if the Postal Service would provided him with reasonable accommodation. Plaintiff argued that he could deliver mail and suggested in his response to the defendant's motion for summary judgment that a motorized vehicle could be provided him to help carry out his deliveries. Based on this argument, this court

But as in *Garrett;* "[T]o allow an employer to operate outside the Rehabilitation Act simply due to the formal job title that the employer has chosen to confer on an handicapped employee, contradicts not only common sense, but also the basic promise set forth in the regulations implementing the Rehabilitation Act that 'the Federal Government shall become model employer of handicapped individuals.' " *Garrett,* 820 F.Supp. at 939–40, citing 29 C.F.R. § 1613:703 (1992). Moreover, as with *Garrett,* Florence has at all times maintained that he should be permitted to assume his limited duty responsibilities at the Highland Hill Station and not those of a letter carrier rendering the Service' argument that his qualifications should be measured against a letter carrier's responsibilities even less logical. 820 F.Supp. at 940, n. 10 ("because Taylor seeks reinstatement in a permanent-light duty position—not reinstatement as a rigger—it is difficult to see why Taylor's qualifications to perform as a rigger have anything to do with the work which he seeks to continue to performing in the future.").

Although the Fifth Circuit has not directly addressed this issue, the Court finds the factors considered above instructive in determining whether the plaintiff's qualifications should be based upon his limited duty or his original position. First, as in *Garrett,* Florence has been formally offered and has accepted limited duty assignments within the Postal Service since his injury.[24] According to the affidavits of Postal Service officials, these limited duty jobs are official positions and offered in accordance with the requirements imposed upon the Service by the Department of Labor's policies and procedures.[25] The positions may be modified based on a change in employer/employee conditions, but the employee has a right to

appeal any modifications to his limited duty position.[26] At the time of the challenged transfer, Florence was performing a limited duty assignment at Highland Hills which he had been officially offered and had accepted .[27] This position required performance of only sedentary duties.[28] The affidavits of Postal Service officials also indicate that if a partially disabled employee, such as Florence, refuses or neglects to work after suitable work is offered under its policies, he may not be entitled to further compensation for wage loss and may be subjected to a penalty.[29]

To summarize, although the Postal Service urges this Court to analyze Florence's qualifications as a letter carrier, its own summary judgment proof militates against this approach. Given the fact that the position Florence occupied at the time of the challenged transfer was a limited duty position offered him in accordance with the Department of Labor's policies and procedures governing the Postal Service, and not a short-term, informally created position, the Court finds persuasive the *Garrett* Court's reasoning that it is against this position his qualifications to perform the job must be judged. The Postal Service does not offer any summary judgment proof that Florence was unable to perform the essential functions of the limited duty position he occupied at the time of his transfer and, therefore, this Court finds the Service's argument that Florence is not qualified under the Act unavailing and accordingly recommends its Motion for Summary Judgment DENIED on this point.

### 3. *Pretext*

Defendant next argues that even if plaintiff is found otherwise qualified that the Postal Service has articulated a legitimate non-discriminatory reason for the transfer which is

24. Def.'s Mot. For Summ. J., Pl's Dep, Ex. 3, Ex. 18 Fuentes Affidavit ("Fuentes Aff."); Def.'s Reply, Ex. D.

measured his qualifications against a letter carrier's and found him unqualified because he could not perform the essential functions of a letter carrier. The dispute in that case did not involve a limited duty job. See Mem. In Support of Pl's Resp. To Def's. Mot. for Summ. J. at 9–12, 16, *Florence v. Frank,* CA–3–90–0310–G.

25. Fuentes' Aff.

26. Id.

27. Id.

28. Pl's Dep., Ex. 3.

29. Fuentes' Aff., citing 5 U.S.C. § 8106(c)(2).

not based on Florence's handicap, rather was due to the lack of work available at the Highland Hills Station. This argument raises the *McDonnell Douglas* shifting-burden analysis. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

In cases under the Rehabilitation Act where the employer disclaims any reliance upon the plaintiff's protected status in making the employment decision the burden shifting method of proof defined in *McDonnell Douglas* and its progeny applies to the analysis. *Burns v. City of Columbus Department of Public Safety,* 91 F.3d 836, 841–42 & n. 8 (6th Cir.1996)(recognizing that appellate courts have "routinely" applied Title VII's burden-shifting analysis in "pretext cases" under the Rehabilitation Act); *Prewitt,* 662 F.2d at 305 n. 19 (5th Cir.1981)(finding Title VII jurisprudence applicable to "intentional social-bias discrimination against handicapped persons"); *Bumstead v. Jasper County,* 931 F.Supp. 1323, 1336 (E.D.Tex. 1996) citing *Prewitt,* supra.

Under the *McDonnell Douglas* formula, a plaintiff must first establish a *prima facie* case of discrimination which, in turn, raises an inference of unlawful discrimination. *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. at 1824–25; *Burns,* 91 F.3d at 842. Once the plaintiff has established his *prima facie* case, the burden of production shifts to the employer to proffer a legitimate non-discriminatory reason for the challenged decision. 411 U.S. at 802, 93 S Ct. at 1824; *Burns,* 91 F.3d at 843 citing *Texas Dept. Of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). The employer may satisfy this burden by presenting evidence which, " 'if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action' ". *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 993 (5th Cir.1996) citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). Upon meeting its burden of production, the inference raised by plaintiff's prima facie case disappears and the focus shifts to the issue of intentional discrimination. *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 (5th Cir.1996) citing *Burdine,* 450 U.S. at 255 & n. 10, 101 S.Ct. at 1094–95 & n. 10 and *Hicks,* 509 U.S. at 510–11, 113 S.Ct. at 2749.

To survive summary judgment on the issue of intentional discrimination, plaintiff must present competent proof that "would allow a reasonable trier of fact to conclude that [the employer's] articulated reasons were merely a pretext for discrimination" *Grimes v. Tx. Dept. Of Health,* 102 F.3d 137, 143 (5th Cir.1996). Put another way, "a plaintiff can avoid summary judgment if the evidence, taken as a whole: (1) creates a fact issue as to whether each of the employer's stated reasons was not what actually motivated the employer and (2) creates a reasonable inference that [a prohibited factor] was a determinative factor in the actions of which plaintiff complains." *Grimes,* 102 F.3d at 141 citing *LaPierre,* 86 F.3d at 450 and *Rhodes* 75 F.3d at 994.

In this case, as noted, there is no dispute between the parties over Florence' handicap, and, for the reasons, set forth in the previous section, Florence has established that he is otherwise qualified to perform the limited duty job he was assigned to at the time of the transfer. Thus, the only issues under this *McDonnell Douglas* analysis are whether the Service has articulated a non-discriminatory reason for the transfer and, if so, whether Florence has presented competent summary judgment proof which creates a reasonable inference of discriminatory intent. With this in mind, the Court turns to the proof presented.

The Postal Service contends, through the affidavit of plaintiff's former supervisor, Clyde Henderson, that the basis for Florence's transfer was the lack of work available for limited duty employees at the Highland Hills Station and that Florence and other limited duty employees were so advised at the December, 1990 meeting.[30] In addition to the stated reason that there was inadequate work within Florence's limitations at the Highland Hills Station, Henderson also

---

**30.** Def.'s Reply at 4; Henderson Aff.

avers that on November 2, 1990, that Florence was issued new job restrictions and a modified job assignment for the Highland Hills Station which required carrying and casing the mail.[31] He states that Florence refused to perform the casing and delivery requirements of his November 2, 1990, modified job assignment, and suggests that this was an additional basis for Florence's transfer to Highland Hills.[32]

Under the *McDonnell Douglas* analysis, the court must decide whether this explanation, if believed, would support a finding that the challenged transfer was non-discriminatory. *LaPierre*, 86 F.3d at 448 citing *Burdine*, 450 U.S. at 255 & n. 10, 101 S.Ct. at 1094–95 & n. 10. The merits of the explanation are immaterial at this stage, because, "the employer need only articulate a lawful reason, regardless of what its persuasiveness may or may not be." *Bodenheimer v. PPG Ind., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993). The Court finds that if the Postal Service's explanation, if believed by the fact finder, supports a finding that handicap discrimination was not the basis for the transfer. Having so found, the focus shifts to the plaintiff's summary judgment proof to determine if it is such that it creates a reasonable inference of discriminatory intent.

Florence's proof of discriminatory intent includes consists of affidavit testimony of the plaintiff and other postal employees, familiar with the circumstances surrounding the transfer, which refutes the Service's contention that there was inadequate work at Highland Hills in December, 1990. First, Florence in his affidavit, states that December, 1990, he was called to a meeting by his supervisor, Clyde Henderson, where he and other limited duty employees were asked to change their physical restrictions so that they could carry mail. Florence states that when he did not change his restrictions, he was transferred to Brookhollow.[33] Florence also maintains in his affidavit that there was adequate work available for all of the limited duty employees at Highland Hills at the time he was transferred, and that he was never informed otherwise.[34] He also disputes that he was ever given a modified job assignment in November, 1990.[35]

In support of his version of events, Florence also offers the affidavit of Mikle W. Williams, the Acting Union Steward at the Highland Hills Station in December, 1990, who states that at the time of Florence's transfer, there was adequate work within his limitations at the Highland Hills Station.[36] The affidavit of Larry Tolbert, a limited duty employee assigned to Highland Hills at the time of Florence's transfer further supports Florence's rendition of what occurred. Tolbert who was in attendance at the December, 1990 meeting, recounts that those in attendance were told that "if [they] wanted something [they] would have to give something in return", and that they were specifically asked to have their doctors change their physical restrictions so that they could carry mail.[37] He states that states there was still " plenty of work" available at Highland Hills after Florence's transfer within his restrictions and that he was never advised to the contrary.[38] The affidavit of Milton Cobb, a postal employee at Highland Hills since 1982 also states that there has always been enough work at that station for limited duty employees.[39] Finally, Henderson and Florence's affidavits are also directly at odds over whether Florence was given a modified job assignment in November, 1990.

With Florence's evidence in mind, the question before the court is, first, whether he has raised a fact issue as to the truth of the defendant's explanation. *LaPierre*, 86 F.3d at 450. Applying this standard to Florence's proof, the Court finds that he has satisfied his burden. First, the veracity of Henderson's statements that Florence was

---

31. Henderson Aff. at ¶ 3.

32. Id. at ¶¶ 3, 4.

33. Florence Aff.

34. Id. at ¶ 9.

35. Id. at ¶ 10.

36. Pl's Resp. Att. 2, Williams' Aff. at ¶ 1 & 2.

37. Pl's Resp., Att. 10, Tolbert Aff.

38. Id.

39. Pl's Resp. Att. 7, Cobb Aff.

transferred due to the lack of work at Highland Hills is squarely called into question by plaintiff's summary judgment proof. The affidavits of Florence, Williams, Cobb, and Tolbert all indicate there was enough work at the Highland Hills Station at the time of Florence's transfer to keep the limited duty employees busy. Similarly, Henderson's statement that he informed the employees at the December meeting about the work shortage directly conflicts with statements by both Florence and Tolbert who state they were never so informed. Finally, as mentioned above, Florence disputes Henderson's statement that his restrictions were modified in November, 1990. These disputes over the truthfulness of Henderson's stated reasons for the transfer raise a fact issue as to the true nature of Henderson's reasons for the transfer. This, however, does not close the inquiry because plaintiff must also raise a reasonable inference with his proof that handicap was a determinative factor in the decision to transfer. And he has.

Florence and Tolbert both state in their affidavits that they were asked to change their restrictions to carry mail at the December, 1990 meeting. Henderson, on the other hand, disputes that any employee was asked to change his restrictions but claims that Florence's restriction were modified in November, 1990, a fact Florence denies. Florence was transferred shortly after the December meeting. This conflict over whether employees were told to change their restrictions and whether Florence's restrictions were modified combined with evidence calling into question the truthfulness of Henderson's explanation for the transfer create a reasonable inference of discriminatory intent. Both sides of this dispute were in a position to know what occurred when plaintiff was transferred, and both disagree over fundamental details surrounding the transfer. These disputes are over details that go to the heart of plaintiff's discrimination claim and, therefore, preclude summary judgment. In sum. Florence has produced evidence which would both allow a fact finder to reject the Postal Service's proffered reasons for the transfer and infer discriminatory intent.

*Rhodes,* 75 F.3d at 994. For these reasons, the defendant's motion for summary judgment on this issue should be DENIED.

*Title VII retaliation*

The Postal Service next takes issue with whether plaintiff's transfer to the Brookhollow station constituted an "adverse employment action," an essential element of plaintiff's Title VII retaliation claim.[40] The specific question raised by this argument is whether Florence's transfer to the Brookhollow station, which resulted in a change in scheduled work hours, travel time and duties but no change in pay, benefits or job title, constitutes an adverse employment action under the anti-retaliation provisions of Title VII. To answer this question, the court first must first examine how the courts have construed the term adverse employment action under Title VII.

To establish a *prima facie* case of Title VII retaliation, a plaintiff must show: 1) that he engaged in an activity protected by Title VII; 2) that an adverse employment action occurred; and 3) that there was a causal connection between the participation and the protected activity and the adverse employment action. *Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir.1985). The Fifth Circuit has construed the term "adverse employment action" under the anti-retaliation provisions of Title VII (42 U.S.C. § 2000e–3) more narrowly than under the preceding section covering general claims of discrimination under § 2000e–2(a)(1),(2). *Mattern v. Eastman Kodak Company,* 104 F.3d 702, 708–09 (5th Cir.1997), (contrasting the standard for establishing an adverse employment action under the anti-retaliation provision of 2000e–3 with the "more vague proscription" found in 2000e–2(a)(1),(2) which "reaches acts which merely 'would tend' to affect the employee").

In *Mattern,* the Fifth Circuit reiterated its "long-held rule" that it is only "ultimate employment decisions" and not "interlocutory or mediate" decisions which provide the basis for liability under the anti-retaliation provisions of Title VII. 104 F.3d at 707 citing *Dollis,* 77 F.3d at 781–82. See also *Lulac Councils 4433 & 4436 v. City of Gal-*

---

**40.** In its motion for summary judgment, the Service also challenges Florence's retaliation claim on the issue of pretext, however, in its reply brief the Service abandons this argument, consequently, it will not be addressed by the court. Def's Reply, at 6.

*veston,* 979 F.Supp. 514 (S.D.Tex. 1997). Ultimate employment decisions are acts "such as hiring, granting leave, discharging, promoting, and compensating" which have an immediate effect on the terms and conditions of employment. 104 F.3d at 707–08. On the other hand, actions with only a tangential effect on conditions of employment, such as hostility from fellow employees, threats of being fired, reprimands, missed pay increases or being placed on 'final warning' are not ultimate employment decisions.[41] 104 F.3d at 707–08 citing *Dollis,* 77 F.3d at 781–82, citing *Page v. Bolger,* 645 F.2d, 227, 233 (4th Cir.) *cert. denied,* 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981) ("...interlocutory or mediate decisions having no immediate effect upon employment conditions...were not intended to fall within the direct proscriptions of § 717 and comparable provisions of Title VII."); See also *Torres v. Pisano,* 116 F.3d 625, 640 (2d Cir.1997)(describing an adverse employment action as a " 'materially adverse change in the terms and conditions of employment.' ").

▮ With the foregoing case authority as a guide, the court must now decide whether Florence's unwanted transfer rises to the level of an ultimate employment decision or is merely tangential to the conditions of his employment. In other words, the issue squarely before the court is whether Florence's a transfer to a less desirable station with less desirable work hours and location but no change in pay, job title, or benefits affected the terms and conditions of his employment within the meaning of *Mattern.*

As an initial observation, the court notes that a transfer, as contrasted with a termination or demotion does not lend itself to automatic labeling as an "ultimate employment decision." Nor, on the other hand, does a transfer fall easily in line with those actions described as tangential to employment conditions. Rather, the courts examining this question have come down on both sides of the issue. The lack of uniformity appears to be due to the myriad ways in which a transfer can affect employment conditions and the variety of circumstances under which courts have addressed this issue.[42]

One factor courts have consistently relied upon in determining whether a transfer constitutes an adverse employment action is whether the employee suffered any negative consequences due to the transfer. *Spring v. Sheboygan Area School District,* 865 F.2d 883, 886 (7th Cir.1989) (ADEA suit where the court found that because transfer carried no negative consequences other than an increase in the distance of travel to work it was not an adverse action). These negative consequences can include a demotion or a reduction in pay or benefits. *Williams v. Bristol–Myers Squibb, Co.,* 85 F.3d 270, 274 (7th Cir.1996) (ADEA retaliation case, where the Seventh Circuit found that a "strictly lateral transfer" of a salesman between divisions in a pharmaceutical company, that did not involve a demotion of reduction in pay, was not an adverse employment action). Other adverse consequences are where the transfer results in material changes in job duties and

---

**41.** Examples of other employment actions the *Mattern* court found did not rise to the level of ultimate employment decisions included: being refused consideration for promotion, refused permission to attend a training conference, criticism of work and disciplinary filings. *Mattern,* 104 F.3d at 708 citing *Dollis,* 77 F.3d at 779–80 and *Whitaker v. Carney,* 778 F.2d 216 (5th Cir.1985) cert. denied, 479 U.S. 813, 107 S.Ct. 64, 93 L.Ed.2d 23 (1986)

**42.** It is helpful to this analysis to recognize that many courts addressing whether a transfer constitutes an adverse employment action have done so in cases which did not involve Title VII retaliation claims. *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 73–4, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)( First Amendment retaliation case, where court stated a transfer can constitute an adverse employment action) *Forsyth v. City of Dallas, TX,* 91 F.3d 769, 776 (5th Cir.1996)(transfer constitutes an adverse action under Texas Whistleblower Act.); See *Lulac Council 4433 & 4436 v. City of Galveston,* 979 F.Supp. 514, 517 (S.D.Tex. 1997) (general claim of discrimination under § 2000e–2(a)(1), where the court recognized *Mattern*'s distinction between § 2000e–3 and 2000e–2(a)(1) and found plaintiff police officers' transfers to nightwatch constituted adverse employment actions under § 2000e–2(a)(1)). In light of *Mattern,* the court recognizes that these cases do not provide controlling authority for what constitutes an adverse employment action under § 2000e–3. Nonetheless, as set forth below, the factors the courts have relied on in cases both under Title VII's anti-retaliation provisions and under other statutory provisions provide guidance on the issue of under what circumstances a transfer constitutes an adverse employment action.

opportunities for advancement. *Armstrong v. City of Dallas*, 829 F.Supp. 875, 880 (N.D.Tex.1992), *aff'd,* 997 F.2d 62 (5th Cir. 1993) (Title VII retaliation case where a firefighter's transfer to a non-firefighting position constituted an adverse employment action); *McCabe v. Sharrett*, 12 F.3d 1558, 1564 (11th Cir.1994). (a § 1983 retaliation suit where a plaintiff was transferred to a position which included menial tasks with fewer responsibilities and fewer opportunities for pay increases the court found that he had suffered an adverse employment action); *see also Collins v. State of Illinois*, 830 F.2d 692, 703–04 (7th Cir.1987) (being deprived of one's office or placed in an isolated corner can constitute an adverse employment action). A transfer to a less desirable location has been found to constitute an adverse action. *Ladapo v. City of Dallas*, No. 3:96–CV–1791–G, 1997 WL 600696 *7 (N.D.Tex. September 19, 1997). A transfer to a night shift has also been found to constitute more than a minor change in work conditions. *Khan v. Cook County*, No. 96–C–1113, 1996 WL 432410 *2 (N.D.Ill. July 30, 1996) citing *Hamilton v. Rodgers*, 791 F.2d 439, 442 (5th Cir.1986).

In this case, Florence's summary judgment proof indicates that he suffered some negative consequences as a result of his transfer. Whether those consequences rise to the level of an adverse employment action under *Mattern*, is not clear from the evidence presently before the court. While he did not receive a reduction in pay or benefits or a change in job title, it is clear that this was a less desirable location for Florence. Additionally, his scheduled work hours changed from 9:30 a.m. to 6:00 p.m. at Highland Hills to 5:00 a.m. to 1:30 p.m. at the Brookhollow Station.[43] There is also some evidence that his travel time was increased when he had to report to Brookhollow.[44] And his duties, although sedentary, were different at Brookhollow than those he performed at Highland Hills.[45] Given his handicap, these changes may constitute a material change in the terms and conditions of his employment as contemplated in *Mattern*. However, the evidence on this point is too sketchy to determine this question as a matter of law on summary judgment. For this reason, the court recommends that the defendant's motion for summary judgment on this issue be DENIED.

*Conclusion*

For the foregoing reasons, the undersigned Magistrate Judge recommends that the defendant's Motion for Summary Judgment be DENIED in its entirety.

## ORDER

FITZWATER, District Judge.

After making an independent review of the pleadings, files and records in this case, and the Findings, Conclusions and Recommendation of the United States Magistrate Judge, I am of the opinion that the Findings and Conclusions of the Magistrate Judge are correct and they are adopted as the Findings and Conclusions of the Court.

December 24, 1997.

---

**43.** See note 9, supra.

