**LULAC COUNCILS 4433 & 4436, Raymond Rubio, and Anthony Martinez, Plaintiff,**

v.

**CITY OF GALVESTON, Defendant.**

No. CIV.A. G–96–085.

United States District Court, S.D. Texas, Galveston Division.

Oct. 7, 1997.

Anthony P. Griffin, Galveston, TX, Larry V. Green, Larry V. Green and Associates, Houston, TX, for Plaintiffs.

John Edward Eckel, Mills Shirley et al, Galveston, TX, Carla Jean Cotropia, Mills Shirley Eckel and Bassett, Houston, TX, for Defendant.

### *ORDER DENYING SUMMARY JUDGMENT*

KENT, District Judge.

Plaintiffs bring this suit against Defendant, the City of Galveston, alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Now before the Court is Defendant's Motion for Summary Judgment of August 25, 1997. For the reasons set forth below, the Motion is **DENIED.**

## I. FACTUAL SUMMARY

Plaintiff Raymond Rubio, a male of Hispanic origin, began work with the City of Galveston, Texas as a patrol officer on January 15, 1968. In 1971, Officer Rubio transferred to the Juvenile Division as a patrol officer. Seven years later, Rubio was promoted to the rank of sergeant and became supervisor of the Juvenile Division. Rubio served in that capacity until on April 28, 1994, at which time he was transferred to the Patrol Division and placed on a midnight to seven a.m. shift. A white male took Officer Rubio's former position in the Juvenile Division. Although the Police Chief gave a general statement that the transfer was for the betterment of the department, Rubio contends the decision was motivated by race.

Plaintiff Anthony Martinez, also a male of Hispanic origin, began working with the Galveston Police Department on October 1, 1973 as a patrol officer. In 1984, Martinez was promoted to sergeant and was put in charge of the Burglary Task Force, which is part of the Criminal Investigation Division. Ten years later, Martinez was removed from that position and replaced by a white male.[1] Martinez alleges that his transfer to "nightwatch patrol" was motivated by race.[2] This case is set for trial on October 20, 1997.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require

resolution by a trier of fact. Id. at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. Id. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Dixon v. State Farm Fire & Casualty Co., 799 F.Supp. 691 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. Anderson, 477 U.S. at 255, 106 S.Ct. at 2513.

## III. MCDONNELL DOUGLASS/BURDINE FRAMEWORK

In this case, it is alleged that Defendant was motivated by racial animosity when it transferred Plaintiffs from their former positions. Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides in relevant part:

It shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2 (a)(1). A Title VII claim requires a showing of intentional discrimination. The Fifth Circuit applies the burden shifting analytical framework first established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973),[3] to analyze claims of

---

**1.** Officer Martinez was replaced by the son of the Galveston Chief of Police.

**2.** Three original Plaintiffs, LULAC Councils 4433 and 4436, and Carmen Parker sought a nonsuit in this case. Their claims were dismissed with

prejudice October 8, 1996 and August 5, 1997, respectively.

**3.** McDonnell Douglas was refined in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and was recently clarified in St. Mary's Honor

intentional discrimination. *See Armstrong v. City of Dallas,* 997 F.2d 62, 65 n. 2 (5th Cir.1993).

Under the *McDonnell Douglas/Burdine* framework, the Court employs a three-part test designed to determine the motivation of the defendant in taking the challenged action. *See McDonnell Douglas,* 411 U.S. at 803–04, 93 S.Ct. at 1824–25; *Burdine,* 450 U.S. at 253–54, 101 S.Ct. at 1093–94. First, the plaintiff is required to establish a *prima facie* case wherein he must establish the elements of the discrimination claim. If the plaintiff proves his *prima facie* case, a presumption of discrimination arises. *See Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955, 957 (5th Cir.1993). The burden of production then shifts to the defendant to rebut this presumption by articulating a legitimate, nondiscriminatory reason for the alleged discriminatory action. *See Olitsky v. Spencer Gifts, Inc.,* 964 F.2d 1471, 1478 n. 19 (5th Cir.1992). A defendant meets this burden by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for the defendant. *See Guthrie v. Tifco Indus.,* 941 F.2d 374, 376 (5th Cir. 1991). The defendant need not persuade the trier of fact that there was no intentional discrimination; it need only produce evidence on that point. *See St. Mary's,* 509 U.S. at 507, 113 S.Ct. at 2747. Third, once the defendant satisfies this burden, the presumption of discrimination established by the plaintiff's *prima facie* case dissolves. *See Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. The plaintiff's burden of persuasion then arises, and the plaintiff must produce evidence that the defendant's proffered reasons are mere pretexts, the real reason for the action having been based on an impermissible *animus. See id.* at 256, 101 S.Ct. at 1095; *Bodenheimer,* 5 F.3d at 959. The plaintiff may succeed here, either by persuading the Court that a discriminatory reason more likely motivated the defendant or by showing that the defendant's proffered reason is unworthy of credence. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. The ultimate burden of proof of intentional discrimination rests at all times on the plaintiff. *See St. Mary's,* 509 U.S. at 507, 113 S.Ct. at 2749.

Summary judgment is particularly appropriate when the Court is evaluating evidence at the "pretext" stage of the *McDonnell Douglas* analysis.

> "[I]t is relatively easy both for a plaintiff to establish a *prima facie* case and for a defendant to articulate a legitimate, nondiscriminatory reason for his decision.... In the context of summary judgment ..., the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext."

*Britt v. The Grocers Supply Co.,* 978 F.2d 1441, 1450 (5th Cir.1992) (quoting *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 811 (5th Cir.1991) (citations omitted)). Speculation and belief are insufficient to create a fact issue as to pretext. *See Britt,* 978 F.2d at 1451. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that he has been discriminated against. *See E.E.O.C. v. Exxon Shipping Co.,* 745 F.2d 967, 976 (5th Cir.1984).

To establish a *prima facie* case of disparate treatment under Title VII, the Plaintiff must show that:

(1) he is a member of a protected class;

(2) he was qualified for the position;

(3) he was subjected to adverse employment action; and

(4) he was replaced by a similarly situated white male.

*McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824, *Ward v. Bechtel Corp.,* 102 F.3d 199, 202 (5th Cir.1997).

## IV. ANALYSIS

Defendant's Summary Judgment Motion is based on two grounds. Defendant initially claims that Plaintiffs have suffered no adverse employment action and therefore cannot establish a *prima facie* case. In the alternative, Defendant contends that it has

---

*Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Both *McDonnell Doug-* *las* and *St. Mary's* involved racial discrimination.

provided a legitimate, nondiscriminatory reason for Plaintiffs' transfers and therefore summary judgment is proper under the *McDonnell Douglas/Burdine* framework.

### 1. *Is There Adverse Employment Action in this Case?*

█ Both Rubio and Martinez admit in deposition that their transfers did not affect their pay, benefits, or vacation time. Both further concede that neither has applied for or has been denied a promotion or chance to seek a promotion. Moreover, neither man was terminated. Defendant argues that because Plaintiffs have suffered no ultimate employment decision—that is, they were only transferred, not terminated—there is no adverse employment action in this case that enables Plaintiffs to establish a *prima facie* case under Title VII. In support of this position, Defendant cites *Mattern v. Eastman Kodak Co.,* 104 F.3d 702 (5th Cir.1997), *petition for cert. filed,* 66 U.S.L.W. 3108 (U.S. July 21, 1997) (No. 97–126). In that case, the Fifth Circuit discussed the definition of "adverse employment action" as that term is applied in retaliation cases under Title VII:

> The import of these cases . . . is the long-held rule that Title VII's *anti-retaliation* provision refers to ultimate employment decisions, and not to an "interlocutory or mediate" decision which can lead to an ultimate decision. Obviously, this reading is grounded in the language of Title VII. As quoted earlier, the anti-retaliation provision states that employers shall not "discriminate" against employees for taking action protected by Title VII. In defining this term, we look, of course, to other Title VII sections for guidance; in this case, the preceding section is helpful.
>
> That section [2000e–2] states, in part, that it is unlawful to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment." *This*

type of employer action [described in the anti-retaliation provision of Title VII] *contrasts sharply with the more vague proscription, found in the next subpart [2000e–2], or "limitation" of employees which deprive or "would tend to deprive" the employee of "opportunities" or "adversely affect his status." It goes without saying that this second subpart reaches much farther than the first. It reaches acts which merely "would tend" to affect the employee: obviously, the way in which the employee may be affected in this subpart is much broader.*

*Id.* at 708–09 (emphasis added) (citations omitted). From the most cursory reading, it is quite clear that Defendant's reliance on *Eastman Kodak* is misplaced. The import of *Eastman Kodak* is that the anti-retaliation provision (42 U.S.C. § 2000e–3) of Title VII requires an ultimate employment decision before a plaintiff can establish a *prima facie* case. Plaintiffs here allege discrimination based on 42 U.S.C. § 2000e–2(a)(1); no *ultimate* employment action need be established under this section, only *adverse* employment action need be shown.[4]

█ Adverse employment actions under § 2000e–2 (a)(1) include discharges, demotions, refusals to hire, refusals to promote, and reprimands. *See Pierce v. Texas Department of Criminal Justice, Institutional Division,* 37 F.3d 1146, 1149 (5th Cir.1994) (interpreting the anti-retaliation provision of Title VII). An unwanted transfer may also qualify as an adverse employment action. *See Rutan v. Republican Party of Illinois,* 497 U.S. 62, 73–74, 110 S.Ct. 2729, 2736–37, 111 L.Ed.2d 52 (1990) (holding that transfers based on political affiliation are an impermissible infringement on the First Amendment rights of public employees); *Ladapo v. City of Dallas,* No. 3:96–CV–1791–G, 1997 WL 600696, *7 (N.D.Tex. Sept.19, 1997) (concluding that an employee's transfer constituted an adverse employment action).[5]

---

**4.** Interestingly, the *one* case that Defendant cites in support of its argument actually disproves such argument.

**5.** The Seventh Circuit has defined with specificity "adverse employment action" as:

> [A] material adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced

Moreover, § 2000e–2 (a)(1) "reaches acts which merely 'would tend' to affect the employee; obviously, the way in which the employee may be affected in this subpart is much broader [than the anti-retaliation provision of Title VII]" *Eastman Kodak*, 104 F.3d at 709; *see also Forsyth v. City of Dallas*, 91 F.3d 769, 773 (5th Cir.1996) (holding that the transfer of police officers from intelligence division to uniformed night patrol constituted a demotion), *cert. denied,* —— U.S. ——, 118 S.Ct. 64, —— L.Ed.2d —— (1997); *La Pierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 (5th Cir.1996) (holding that a demotion from service manager to mechanic created a fact issue as to whether an adverse employment action had occurred); *Rizzo v. Children's World Learning Ctrs., Inc.,* 84 F.3d 758, 765 (5th Cir.1996) (holding that an employer's decision to lower a disabled employee's hours, to require her to work a "split shift," and to change her position from bus driver to cook produced a fact issue as to whether there had been an adverse employment action); *Polanco v. City of Austin,* 78 F.3d 968, 980 (5th Cir.1996) (upholding jury finding that Hispanic police officer was disciplined more severely than his Caucasian counterpart); *Click v. Copeland,* 970 F.2d 106, 109 (5th Cir.1992) (holding that simply because sheriff deputies received no decrease in pay did not mean that their transfers were not demotions); *Fyfe v. Curlee,* 902 F.2d 401, 404 (5th Cir.1990) (holding that a transfer to a less desirable but equally paying job constituted a demotion); *Levin v. Delta Air Lines, Inc.,* 730 F.2d 994, 996 (5th Cir.1984) (holding that placing pregnant flight attendants on ground duty was an adverse employment action).

The gravamen of Plaintiffs' Complaint is that they were removed from their respective departments and were placed in less prestigious positions. It is alleged that this action was taken in order to give white males Plaintiffs' former positions. Although not a change in rank or pay, Plaintiffs argue that these transfers were clearly seen by their peers and the public as demotions. Moreover, Plaintiffs contend that the patrol department, the department to which both men were transferred, is the workhorse of the police force and that people rarely want to be transferred into it; instead, officers seek to be transferred out. Plaintiffs also allege emotional injury as a result of their transfers. Clearly under Title VII, Plaintiffs have established at the very least a fact issue as to whether they have suffered adverse employment action. Without weighing the merits, the Court finds that a reasonable jury *could* find that such transfers constitute a "limitation" of employment which deprive or "tend to deprive" Plaintiffs of "opportunities" or at the very least "adversely affect [their] status." *See* 42 U.S.C. § 2000e–2(a)(1); *Armstrong,* 997 F.2d at 66 n. 12. ("We no longer ask whether literally little evidence, i.e., a scintilla or less, exists but, whether the nonmovant could, on the strength of the record evidence, carry the burden of persuasion with a reasonable jury."). Thus, without commenting on the strength of Plaintiffs' claims, the Court finds that Plaintiffs have established a *prima facie* case.

### 2. Do Plaintiffs Survive the McDonnell Douglass/Burdine Framework?

▇▇▇▇ Defendant offers as its reason for transferring Plaintiffs the Police Chief's authority to do so. The Court finds this reason in and of itself insufficient.[6] However, Defendant further asserts that the Chief made his decision pursuant to policy and in the best interests of the department, believing that a rotation of officers through the various departments would increase the collective

by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.
*Crady v. Liberty National Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993).

**6.** Under the *McDonnell Douglas* analytical framework, Defendant must offer a *legitimate,* nondiscriminatory reason for its challenged action. The defendant's burden in a summary judgment setting, however, is not to persuade the Court that the explanation is correct but, rather, to preserve a genuine factual issue with respect to the existence of discrimination. *See Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The Court finds that simply declaring that the Police Chief has the authority to transfer personnel is absolutely irrelevant in this analysis, and without more, establishes nothing.

knowledge of all officers. The Court finds Defendant's proffered reason legitimate and nondiscriminatory. If believed by the trier of fact, such explanation would support a finding that the decision to transfer Plaintiffs was nondiscriminatory. Accordingly, *McDonnell Douglas'* burden-shifting structure becomes irrelevant to Plaintiffs' claims, and the inference of unlawful discrimination created by Plaintiffs' prima facie evidence disappears. *See La Pierre,* 86 F.3d at 449–50.

■■■■ Having found that Defendant has provided a legitimate, nondiscriminatory reason for termination, the Court now turns to the issue of pretext. The Court is cognizant that "[s]peculation and belief are insufficient to create a fact issue as to pretext." *McKey v. Occidental Chem. Corp.,* 956 F.Supp. 1313, 1319 (S.D.Tex.1997) (Kent, J.). The Court also understands that conclusory statements by Plaintiffs will not suffice. *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir.1996) ("In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movant's burden.... It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason.") (*en banc* ); *see also Ray v. Tandem Computers,* 63 F.3d 429, 434 (5th Cir.1995) (stating that "bald assertions of age discrimination are inadequate to permit a finding that proscribed discrimination motivated [Defendant's] actions against [Plaintiff]").

A plaintiff alleging employment discrimination need not come forward with direct evidence of discriminatory intent in order to avoid summary judgment. *See La Pierre,* 86 F.3d at 449; *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir.1996) (*en banc* ). Such direct evidence of an employer's discriminatory intent is rare; therefore, Title VII plaintiffs ordinarily must prove their claims through circumstantial evidence. A plaintiff establishes this circumstantial evidence of intentional discrimination by demonstrating that Defendant's articulated nondis-

criminatory rationale is pretextual. *See McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. Indeed, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *St. Mary's,* 509 U.S. at 511, 113 S.Ct. at 2749.

The circumstantial evidence offered by Plaintiffs here goes well beyond speculation and conjecture. Plaintiffs allege that although the transfer policy used by the Police Chief was adopted in 1983, it was not implemented until 1994, when it was used to transfer Plaintiffs. Moreover, Plaintiffs contend that the only persons negatively affected by the policy were minority officers; conversely, Plaintiffs argue that only white officers benefitted from the policy. Plaintiffs further allege that the Chief did not begin a "wholesale" transfer of other persons pursuant to the policy until a grievance was filed challenging it, intimating that implementation of the policy was conducted to "coverup" racial motives. Moreover, Plaintiffs claim that their transfers violated established customs of the Police Department.

Plaintiffs also urge this Court to find Defendant's proffered reason for the transfers not credible and unworthy of credence. In support of this argument, Plaintiffs contend that the Police Chief commonly made racial jokes. Indeed, the Chief admits to using the word "nigger." Plaintiffs also argue that several other minorities were adversely affected by the Chief's policies. The Court finds that Plaintiffs' statements are sufficient to establish a fact issue as to pretext. *See Burdine,* 450 U.S. at 255, 101 S.Ct. at 1095 (noting that in order to avoid summary judgment, the plaintiff must offer some evidence that the legitimate, nondiscriminatory reason proffered is mere pretext); *Rhodes,* 75 F.3d at 994 ("[A] jury issue will be presented and a plaintiff can avoid summary judgment ... if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [race]

was a determinative factor in the actions of which plaintiff complains."); *Britt*, 978 F.2d at 1450 ("[T]he question is not whether the plaintiff proves pretext, but rather the plaintiff raises a genuine issue of material fact regarding pretext.") Whether racial animus motivated the Galveston Police Department's rotation policy is clearly an issue best suited for resolution before a trier of fact.

Accordingly, for the reasons stated above, Defendant's Motion for Summary Judgment is **DENIED.** The parties are **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the Fifth Circuit Court of Appeals, as may be appropriate in due course.

**IT IS SO ORDERED.**